United States District Court
Southern District of Texas
**ENTERED**
November 10, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| ABRAHAM CAMPOS, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:15-CV-284 |
| | § | |
| JERILYNN YENNE, *et al.*, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Abraham Campos (TDCJ #00721237) filed a petition for a writ of habeas corpus asserting that the State withheld exculpatory evidence from him and that he was entitled to have certain pieces of evidence subjected to DNA testing under Chapter 64 of the Texas Code of Criminal Procedure. The Court dismissed the *Brady* claim without prejudice as an unauthorized successive habeas petition and recharacterized the request for DNA testing as a claim under 42 U.S.C. § 1983 (Dkt. 7). By separate order, the Court is granting Campos's request for leave to proceed *in forma pauperis* (Dkt. 9). The Court has examined Campos's complaint and will now dismiss his claims with prejudice as frivolous and for failure to state a claim upon which relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B).

## I.    BACKGROUND

Campos is serving a forty-year sentence in Texas state prison for murder. A jury found that Campos stabbed his mother's roommate, Martin Rodriguez, in 1992 during

1

what was evidently a drunken argument. The Fourteenth Court of Appeals of Texas affirmed his conviction. *Campos v. State*, 946 S.W.2d 414 (Tex. App.—Houston [14th Dist.] 1997, no pet.). Years later, Campos filed three motions seeking DNA testing of several pieces of evidence pursuant to Chapter 64 of the Texas Code of Criminal Procedure. Campos never secured a ruling from the trial court on one of the motions; the other two were denied. The denials were affirmed by the First Court of Appeals of Texas, and the Texas Court of Criminal Appeals denied review. *Campos v. State*, No. 01-08-00032-CR, 2008 WL 5102463 (Tex. App.—Houston [1st Dist.] Dec. 4, 2008, pet. ref'd); *Campos v. State*, No. 01-14-00167-CR, 2014 WL 7204966 (Tex. App.—Houston [1st Dist.] Dec. 18, 2014, pet. ref'd).

In its first opinion, the First Court of Appeals summarized the pertinent facts and evidence in this case well:

> In late August 1992, Martin Rodriguez was stabbed to death outside the house he shared with appellant's[1] mother and Rodriguez's uncle, Emilio Miranda. Over the course of several late night hours before the stabbing, appellant, Rodriguez, and Miranda spent time drinking beer together outside that house. All had consumed many beers. At some point, Miranda left the group and went inside the house.

> Miranda testified at trial that he heard Rodriguez screaming and that he looked out a kitchen window to see appellant grabbing Rodriguez while holding a knife. When he ran outside, Miranda saw blood on Rodriguez's body and saw appellant running away from the house.

> At trial, appellant's mother denied any knowledge of anything that happened before or after the stabbing at her house, including whether appellant was present. She contradicted some of Miranda's statements and denied seeing Rodriguez's body on the ground, did not know whether he

---

[1] Campos was the appellant.

2

was alive or dead, and just ran to the neighbor's house to ask for help. Appellant's mother also denied speaking to anyone about the stabbing except police detectives. Yet, three other witnesses testified at trial that appellant's mother told them that her son had killed Rodriguez.

Deputy C. Frame testified that he collected items from the scene of the stabbing. Frame found a knife or knife-like instrument inside the house in the kitchen sink. The instrument was "very wet and saturated with water." No identifiable prints were detected on this knife-like instrument. Moreover, no evidence at the trial established that the instrument was used to murder Rodriguez. Deputy Frame was able to lift fingerprints from a beer can he collected at the scene and testified at trial that the prints matched appellant's fingerprints.

Officer T. Earl of the Alvin Police Department encountered appellant at 2:16 a.m. on the night of the offense. Appellant was six-tenths to seven-tenths of a mile away from his mother's house. He was at a pay phone and appeared to be "very intoxicated." When Officer Earl approached him, appellant identified himself as "Juan Carlos." Officer Earl arrested appellant for public intoxication and transported him to the Alvin Police Department. At the police station, appellant denied having a local address or any relatives in the area and claimed that he lived in Mexico City, Mexico. He was not bleeding and had no scratch marks on him or blood splotches on his clothing.

*Campos*, 2008 WL 5102463, at *1 (footnotes omitted).

The motions filed by Campos in the state courts requested DNA testing of the "knife-like instrument" mentioned above; clothing seized as evidence; and a "pipe" or "faucet handle" that might have gotten bloody when the murderer cleaned his hands. *See Campos*, 2014 WL 7204966, at *2–4 & n.1. Campos is now asking this Court to order DNA testing of the items on the ground that the state courts' disposition of his requests for such testing deprived him of procedural due process.[2]

---

[2] Campos also requests that the Court order testing of a "bloody rag" listed in the police report related to the stabbing (Dkt. 1-3 at p. 1). It does not appear that this item was discussed by the Texas state courts.

3

## II.    DNA TESTING AND PROCEDURAL DUE PROCESS

Under 28 U.S.C. § 1915A, a federal district court must review a prisoner's complaint as soon as practicable and dismiss any claims the court finds to be frivolous, malicious, or inadequate to state a claim upon which relief may be granted. A reviewing court may dismiss a complaint for these same reasons "at any time" where a party, like Campos, proceeds *in forma pauperis*. *See* 28 U.S.C. § 1915(e)(2)(B). A claim may be dismissed as frivolous if it does not have an arguable basis in fact or law. *Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009). To prevail under Section 1983, Campos must establish that he was deprived of a right, privilege, or immunity secured by the Constitution or laws of the United States by the actions of a person or entity operating under color of state law. *Kovacic v. Villareal*, 628 F.3d 209, 213 (5th Cir. 2010).

State prisoners trying to obtain the relief that Campos seeks face an uphill battle in federal court. There is no freestanding substantive due process right to post-conviction DNA testing for the purpose of seeking exculpatory evidence. *District Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 72–75 (2009). A state prisoner seeking post-conviction DNA testing has the right "to show that the governing state law denies him *procedural* due process," but the Supreme Court has characterized that right as a "slim" one. *Skinner v. Switzer*, 562 U.S. 521, 525 (2011) (emphasis added). Given the Supreme Court's holdings, the federal courts "will intervene only if the State's framework offends some principle of justice so rooted in the traditions and conscience of

4

our people as to be ranked as fundamental, or transgresses any recognized principle of fundamental fairness in operation." *Garcia v. Castillo*, 431 Fed. App'x 350, 353 (5th Cir. 2011) (quotation marks omitted).

The Texas post-conviction DNA testing framework places the burden on the convicted person to establish by a preponderance of the evidence that he would not have been convicted if exculpatory results had been obtained through DNA testing of the evidence at issue. TEX. CODE CRIM. PROC. art. 64.03. Texas may impose that burden because the presumption of innocence disappears once a person has received a fair trial and been convicted. *Garcia*, 431 Fed. App'x at 353; *see also Osborne*, 557 U.S. at 68–69 ("A criminal defendant proved guilty after a fair trial does not have the same liberty interests as a free man. At trial, the defendant is presumed innocent and may demand that the government prove its case beyond reasonable doubt. But once a defendant has been afforded a fair trial and convicted of the offense for which he was charged, the presumption of innocence disappears. . . . The State accordingly has more flexibility in deciding what procedures are needed in the context of postconviction relief.") (quotation marks and brackets omitted). What that means is that a Section 1983 plaintiff who, like Campos, has been denied post-conviction DNA testing under the Texas framework cannot establish a violation of his Constitutional rights by merely showing that the Texas courts imposed that framework's evidentiary burden. *Garcia*, 431 Fed. App'x at 353–55. Rather, he must show that the framework was unconstitutional as applied to him—that, in other words, he was denied DNA testing *despite meeting* his burden. *Id*. If the federal

district court concludes that the sought-after testing "would not create serious doubt as to [the convicted person's] guilt[,]" the Constitutional claims are frivolous. *Id.*

### III.    CAMPOS'S CLAIMS

Campos insists that he could show that none of the blood on any of the items he seeks to test is his, which would in turn prove that Miranda's eyewitness identification of Campos as Rodriguez's killer was fatally unreliable. Campos argues that he is entitled to the testing he seeks because the officer who arrested him testified that Campos was not bleeding and had no scratch marks on him or blood splotches on his clothing at the time of his arrest (Dkt. 2 at p. 4). According to Campos, "[t]his testimony of said officer has a value of 51% that Campos would not have been convicted if DNA testing would have been perform [sic] to the undisclose [sic] evidence" (Dkt. 2 at p. 4).

But the absence of Campos's blood on the items would just prove, if anything, that Campos was not injured on the night of the stabbing, which the jury heard from the arresting officer anyway. And the fact that Campos was not injured does not disprove the State's theory that Campos stabbed Rodriguez during a drunken altercation—the medical examiner testified that Rodriguez had a blood alcohol level of roughly three times the legal limit when he died, so it is hard to see him putting up much of a fight against a man with a knife, even if the man with the knife was drunk as well. *See Campos*, 2008 WL 5102463 at *1 n.2 (discussing Rodriguez's blood alcohol level).

Miranda testified that, on the night Rodriguez was stabbed, Miranda, Rodriguez, and Campos drank together for several hours outside the house that Miranda and

6

Rodriguez shared with Campos's mother. After Miranda went into the house, he heard Rodriguez screaming, looked through a window, and saw Campos attack Rodriguez with a knife and then run away. Other evidence corroborated this account: a deputy found Campos's fingerprints on a beer can at the scene; and a different officer, apparently by coincidence, arrested the "very intoxicated" Campos on the night of the stabbing less than a mile from the house. When he was arrested, Campos took great pains to conceal his identity—he lied about his name, claimed to be from Mexico City, and denied having relatives in the area—even though he was only being arrested for the misdemeanor offense of public intoxication. Three witnesses testified that Campos's mother told them that Campos had killed Rodriguez. In short, DNA evidence excluding Campos as the source of the blood on the items that Campos seeks to test would not create serious doubt as to the reliability of Miranda's testimony, in light of the other evidence supporting that testimony.

At trial, Campos impeached Miranda with two prior inconsistent accounts of the incident, one in which Miranda said that someone other than Campos had killed Rodriguez and another in which Miranda said that he could not remember anything about who killed Rodriguez. *See Campos*, 946 S.W.2d at 418. However, Miranda explained that he made the first statement because he wanted to avenge Rodriguez (his nephew) personally and the second statement because Campos's father threatened him. *Id*. The jury obviously believed Miranda, and Campos has not shown that the results of DNA testing on the items he seeks to test would create serious doubt as to the reliability of the

jury's determination. Again, the DNA results would, at best, have been duplicative of the arresting officer's testimony that Campos was unhurt.

Even assuming that post-conviction DNA testing of the items at issue would fail to reveal the presence of Campos's DNA, it would not exculpate Campos. Campos fails to set forth a claim showing that the state courts' rejection of his request for post-conviction DNA testing deprived him of any recognized federal Constitutional right.

## IV.  CONCLUSION

Based on the foregoing, the Court **ORDERS** as follows:

1.  Campos's request for leave to proceed *in forma pauperis* (Dkt. 9) is **GRANTED** by separate order.

2.  Campos's claims are **DISMISSED WITH PREJUDICE** under 28 U.S.C. § 1915(e)(2)(B) as frivolous and for failure to state a claim on which relief may be granted.

3.  Any other pending motions are **DENIED** as moot.

The Clerk is directed to provide a copy of this order to the parties.  The Clerk will also provide a copy of this order by regular mail, facsimile transmission, or e-mail to the District Clerk for the Eastern District of Texas, Tyler Division, 211 West Ferguson, Tyler, Texas, 75702, Attention: Manager of the Three-Strikes List.

SIGNED at Galveston, Texas, this 10th day of November, 2016.

George C. Hanks Jr.
George C. Hanks Jr.
United States District Judge